# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4777 | **DATE** | 8/6/2003 |
| **CASE TITLE** | Wyrick vs. City of Chicago, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Chicago and Bertalmio's motion for summary judgment is granted in part and denied in part [#72]. Summary judgment is granted in favor of Bertalmio on the Count II claim. Summary judgment is denied on Wyrick's Count III hostile work environment claim. Summary judgment is granted in favor of Chicago on both Wyrick's Count III sex discrimination claim and Count V claim under the ADA. This case is set for trial on October 6, 2003. Final pretrial materials shall be submitted to chambers not later than September 5, 2003. In the meantime, the parties will be referred to the designated magistrate judge for a settlement conference. A final pretrial conference is set for September 19, 2003 at 4:00 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 7 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | 6-1 | (03 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/6/2003 | |
| | | 03 AUG -6 PM 4:22 | date mailed notice | |
| MD | courtroom deputy's initials | FILED FOR DOCKETING | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARY K. WYRICK, | ) | DOCKETED |
| | ) | |
| Plaintiff, | ) | AUG 0 7 2003 |
| | ) | |
| vs. | ) | No. 99 C 4777 |
| | ) | Judge Joan H. Lefkow |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, BRUCE BERTALMIO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary K. Wyrick ("Wyrick"), brings this law suit against defendants, the City of Chicago ("Chicago") and Bruce Bertalmio ("Bertalmio"). In Count II of her second amended complaint Wyrick alleges, pursuant to 42 U.S.C. § 1983, that Bertalmio violated her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. In Count III Wyrick alleges that Chicago discriminated against and harassed her based on her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"). In Count V Wyrick alleges that Chicago discriminated against her based on her disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Before the court is Chicago and Bertalmio's motion for summary judgment.[1] For the reasons set forth below, the motion is granted and denied in part.

---

[1] Count I, a § 1983 claim against Chicago for sexual harassment, was previously dismissed. Count IV, a § 1983 claim against Chicago for retaliation, was also dismissed. *See Wyrick* v. *City of Chicago*, No. 99 C 4777, 2001 WL 293082 (N.D. Ill. March 26, 2001).

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The party seeking judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is no genuine issue for trial. *Id* at 324; *Insolia* v. *Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under governing law. *Insolia*, 216 F. 3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF

Chicago employed Wyrick with the Department of Streets and Sanitation as a Laborer from 1994 until her termination on January 8, 1999. (Def. L.R. 56.1 ¶ 5.) Bertalmio began working in the department in 1997 as the General Superintendent. (Wyrick Dep. ¶ 54-60.) As General Superintendent, Bertalmio was four positions above Wyrick in the hierarchy of the Department. (Def. L.R. 56.1 ¶ 19: "In the time frame she was employed at Streets and

2

Sanitation, the hierarchy in Street Operations was as follows: Laborer, Refuse Collection Coordinator, Foreman, General Foreman and General Superintendent."). The sexual harassment Wyrick complains of began shortly after Bertalmio took over as one of Wyrick's supervisors in 1997. Wyrick was on maternity leave between August 1997 and January 6, 1998. (Def. L.R. 56.1 ¶ 20.)

While employed by Chicago, Wyrick was aware that one of the requirements of her employment was that she maintain a residence in Chicago. (Def. L.R. 56.1 ¶ 23.) Nevertheless, in January 1995 Wyrick moved from Chicago to Lake Village, Indiana without notifying Chicago. (Pl. Resp. to Def. L.R. 56.1 ¶ 22.) Beginning in October 1997 and continuing through 1998, Wyrick was investigated by Chicago's Inspector General's Office concerning allegations that she did not reside within the city limits. (Def. L.R. 56.1 ¶ 24.) Wyrick was interviewed by the Inspector General's Office on July 23, 1998 regarding her residency. (Def. L.R. 56.1 ¶ 25.) The next day, she verbally filed a complaint with Chicago's sexual harassment office. (Def. L.R. 56.1 ¶ 26.)

At some point in December 1998, Wyrick underwent testing for breast cancer and reported this to Chicago because of problems with her health insurance. (Pl. L.R. 56.1 Add. Facts ¶ 29.) On December 18, 1998, Wyrick was placed on administrative leave pending the outcome of the residency investigation. (Def. L.R. 56.1 ¶ 27.) Thereafter, she filed a complaint with the EEOC on December 29, 1998. (Def. L.R. 56.1 ¶ 28.) Wyrick was terminated on January 8, 1999. She was diagnosed with breast cancer on January 19, 1999.

3

| Date | Occurrence |
|---|---|
| April or May, 1997 | Sexual harassment allegedly begins |
| August 1997-January 1998 | Wyrick is absent for maternity leave |
| October 1997 | Chicago begins investigation of Wyrick's residency, unknown to her. |
| July 23, 1998 | Chicago's Inspector General's Office interviewed Wyrick concerning her residency. |
| July 24, 1998 | Wyrick files a complaint with the Chicago's sexual harassment office. |
| December, 1998 | Wyrick goes though testing for possible breast cancer and reports this to Chicago because of health insurance problems. |
| December 18, 1998 | Wyrick is placed on administrative leave for violating the City's residency requirement. |
| December 29, 1998 | Wyrick files complaint with the EEOC. |
| January 8, 1999 | Wyrick is fired. |
| January 19, 1999 | Wyrick is diagnosed with cancer. |

**Wyrick's Allegations of Bertalmio's Misconduct**

Wyrick's allegations regarding misconduct by Bertalmio, both verbal and physical,

extend from April 1997, when they began working together, through her termination in January

1999.

*1.*    *Touching*

•    Beginning about April or May of 1997, Bertalmio touched Wyrick approximately five times on her stomach without her consent. (Wyrick Dep. 79, 80.) Wyrick was pregnant at the time. (Wyrick Dep. 80.) Bertalmio said he wanted to "feel the baby kick." (Wyrick Dep. 79.) Wyrick did not tell Bertalmio that this made her uncomfortable. (Wyrick Dep. 79.)

•    In summer 1998, after she had returned from maternity leave, Wyrick was assigned to work at a rally for the Bulls in Grant Park. (Wyrick Dep. 272-73, 284-85.) At the rally, Bertalmio circled Wyrick, and, using his radio antenna, poked her in the right side of her buttocks cheek near the anus and giggled. (Wyrick Dep. 276, 272-73, 284-85.) Wyrick did not report the incident because she wanted to try to work it out herself. (Wyrick Dep. 295-96.) Two other employees were present when this occurred. (Wyrick Dep. 278-9.)

2.    *Suggestive Comments*

• While Wyrick was pregnant, she would change out of her uniform at the end of her shift, and Bertalmio said "Oh, Mary, what are you doing – going out on a hot date now?" and laugh. (Wyrick Dep. 79-82.)

• Wyrick was sitting in a work van with Bertalmio and he would make comments about women on the street. He said, "Oh look at this one. She's got big jugs. Look at her legs." (Wyrick Dep. 264-64.) This occurred approximately four times between April and July 1997. (Wyrick Dep. 114-15.) Bertalmio would also whistle at women. (Wyrick Dep. 113-15.)

• In May 1998, a co-worker, Dan McShane, told Wyrick that Bertalmio had made comments that she was having a sexual relationship with another co-worker. (Wyrick Dep. 264-65.) Bertalmio allegedly said "they're both off on the same day. I bet he's fucking her." (Wyrick Dep. 267.) Bertalmio then spread his legs apart and said "tomorrow she'll be walking like this." (Wyrick Dep. 267.)

• In June 1998 Wyrick was informed by other workers that Bertalmio made a comment over Chicago's radio network, which could be heard by city workers, implying that she was having sex with a co-worker. According to Wyrick, Bertalmio stated that "Mary, are finished doing – are you finished with Mr. McShane. Are you done with him?" Wyrick claims that it was said in a sexually sounding tone as if she was having sex with McShane. Wyrick reported this incident to Chicago's sexual harassment office. (Wyrick Dep. 269-71.)

• Bertalmio told a higher-ranking supervisor that Wyrick did not handle one of the new street sweepers because "there are too many buttons, and blondes are stupid. They aren't able to handle the machine." (Wyrick Dep. 298-99.) Wyrick is blonde. (Wyrick Dep. 301-02.)

• Wyrick had an ink stain on her pants and Bertalmio said "I was only gone for three days and you stained your pants." (Wyrick Dep. 329-33.) Wyrick apparently took the statement to be implying that the stain was vaginal discharge. (Wyrick Dep. at 371.)

• In summer 1998 Bertalmio would stop women on the street and ask them for directions. Afterwards he said to Wyrick, "This dumb bimbo, she was telling me where the street was." (Wyrick Dep. 399-41; 344.)

• In summer 1998, Wyrick was standing up against a wall and Bertalmio stood directly in front of her, within a foot or two and asked her whether she agreed that the affair between President Clinton and Monica Lewinsky should remain between them and was their own business. (Wyrick Dep. 361.)

3.    *Other Incidents*

- Bertalmio would sit at a desk directly across from Wyrick and stare at her while she performed desk work. This occurred for eight weeks. Bertalmio made comments such as "What are you doing Mary? Are you thinking? Uh? Uh? Are you thinking? Is that what you're doing?" (Wyrick Dep. 216-17.)

- Bertalmio would follow Wyrick out to her car or where she was being picked up at the end of her shift. (Wyrick Dep. 415.)

- When Wyrick was speaking with a male co-worker, Bertalmio would stand behind them and point and laugh. This occurred on a weekly basis. (Wyrick Dep. 202-03.)

**Wyrick's Allegations Regarding Hostile Work Environment**

In addition to the incidents involving Bertalmio, Wyrick addresses other incidents she alleges created a hostile work environment and illustrate sex discrimination.

- After informing her foreman, Glenn Bibbo ("Bibbo") that she was pregnant, Wyrick was given more strenuous work assignments. Bibbo received the assignments from Bertalmio. (Wyrick Dep. 56.) Wyrick was assigned to clean Lower Wacker Drive by herself and empty garbage cans by herself while pregnant without a radio. (Wyrick Dep. 67.)

- While assigned to clean Lower Wacker Drive by herself, Wyrick had to use a chemical "tag-away" to remove graffiti. (Wyrick Dep. 162-63.) She complained to the union steward about having to do this while pregnant. (*Id.*)

- On Valentine's Day in 1997 and 1998 a newspaper advertisement was photocopied and placed throughout the office. The advertisement said "Happy Valentine's Day, Mary, from Glenn." (Wyrick Dep. 194-95.) Glenn Bibbo was Wyrick's supervisor. (Wyrick Dep. 67.) Wyrick does not know if someone actually took out the advertisement or if the names were coincidental. (Wyrick Dep. 195.)

- Pornography was left inside the truck Wyrick was assigned to use on July 3, 1998. (Wyrick Dep. 302.) Pornography was also left on her desk on a daily basis for a few weeks. (Wyrick Dep. 313, 321.) Finally, pornography was left in the bathroom shared by men and women. (Wyrick Dep. 324.)

- Paul Dicaro ("Dicaro"), the Refuse Collection Coordinator, routinely scratched his testicles in front of Wyrick throughout her employment. (Wyrick Dep. 347-48.) Dicaro also lifted up his shirt in front of Wyrick and made comments about good looking women. (Wyrick Dep. 349-50.)

- Additionally, Dicaro drove past Wyrick several times over a six-month period while she was working and gave her the middle finger. (Wyrick Dep. 351-52.) While Wyrick did not report to Dicaro, he was in a supervisory position and gave Wyrick job duties and directions. (Wyrick Dep. 353-54.)

- After she returned from maternity leave, Wyrick was assigned to work in the "vaults" of Lower Wacker Drive because she had obtained a note stating that she was breast feeding and could no longer be placed on the back of a garbage truck, which had been her assigned work after she complained of harassment. (Wyrick Dep. 87-88.) Wyrick claims that only minorities and women were assigned to work the "vaults" and that they had to wear special white suits and masks. (Wyrick Dep. 87.) Wyrick was placed in the "vaults" for three weeks. (Wyrick Dep. 90.)

**Wyrick's Job Assignments**

Wyrick had complained about the circumstances she was working under to her immediate boss, Dave Natalino, repeatedly, and was told to not make waves, and to "ride the storm out." (Wyrick Dep. ¶¶ 138; 58-86.) Wyrick reported harassment to her union in July 1998. (Wyrick Dep. ¶ 308.) She was directed to speak with Chicago's sexual harassment office, and made a phone call to that office on July 24, 1998; the call was followed by an intake interview on July 27. (Wyrick Dep. ¶¶ 517-18.) Wyrick signed a sexual harassment report on August 5, 1998. (*Id.*) The sexual harassment office transferred Wyrick to a different department in Sanitation, what the parties refer to as D-5 (she previously worked in R-3), because she did not want to stay working in R-3. (Def. L.R. 56.1 ¶ 103.) As part of her duties in D-5, Wyrick worked on the back of a garbage truck. (Wyrick Dep. ¶¶ 522-23.) While the pay and benefits were identical, Wyrick viewed the move as undesirable and as a demotion because she claims to have lost out on overtime pay. (Wyrick Dep. ¶ 526.)

7

Wyrick claims that, with respect to her violating Chicago's residence policy, other city employees were given a grace period to remedy a violation of city policy. (Wyrick Dep. ¶ 734-36.) Wyrick also argues that the department normally followed a progressive discipline procedure, beginning with verbal warnings, progressing to written reprimands and then progressively longer suspensions. (Bertalmio Dep. ¶ 47.)[2]

**Wyrick's Allegations Regarding Violation of the Americans With Disabilities Act**

Chicago learned that Wyrick might have breast cancer in December 1998. (Wyrick Dep. ¶¶ 510-16.) Wyrick had been told that she no longer had health insurance when she went to the doctor for a mammogram because of a large tumor in her breast. (Wyrick Dep. ¶¶ 510-516.) Wyrick told Chicago personnel, Denise Latton, about the possibility of breast cancer when she went to fix the insurance discrepancy. (Wyrick Dep. ¶¶ 581-82.) Wyrick reported that she was not feeling well, and requested an easier work assignment. Wyrick was placed on administrative leave and was terminated later that month. (Wyrick Dep. ¶¶ 687-94.)

## DISCUSSION

In Count II Wyrick alleges that Bertalmio violated her right to equal protection under the Fourteenth Amendment by his alleged acts of sexual harassment. In Count III Wyrick advances sex discrimination and harassment claims against Chicago under Title VII. In Count V she seeks relief because Chicago allegedly fired her due to her disability in violation of the ADA. The

---

[2]Without citing authority, Chicago argues that Bertalmio's deposition cannot be used on this motion for summary judgment because the deposition was taken in connection with a separate case. Chicago advances no case law supporting this position. However, according to the Federal Rules, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Bertalmio's deposition meets this standard and as a statement of an adverse party could be treated as an admission under Fed. R. Evid. 801(d)(2)(A).

court will first address the claims under Title VII against Chicago followed by the equal protections claim against Bertalmio and the ADA claim against Chicago.

## A.    Title VII Claims Against the Chicago

Wyrick advances both hostile work environment and sex discrimination claims against Chicago under Title VII. Initially, Chicago challenges the timeliness of some of Wyrick's claims, including Bertalmio's comments about women's breasts and legs, his touching of Wyrick's stomach while she was pregnant, his asking Wyrick if she "had a hot date," one Valentine's day advertisement involving Bibbo, the work requirements that she lift empty garbage cans while pregnant and use a chemical to remove graffiti, and the decision to make her work alone on Lower Wacker Drive without a radio. According to Chicago, these incidents are time-barred because they occurred more than 300 days before Wyrick filed her charge of discrimination with the EEOC.

Because Illinois is a deferral state, "[a] plaintiff . . . must file a charge of discrimination with the EEOC or an equivalent state agency within 300 days after the 'alleged unlawful employment practice.'" *Sharp* v. *United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001), quoting 42 U.S.C. § 2000e-5(e)(1). In general, this means that any discriminatory act that occurred more than 300 days before the EEOC charge was filed on December 29, 1998 is time-barred. The 300-day limit begins to run when the defendant "has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, 'not when [she] determines that the injury was unlawful." *Id.* at 372 (internal citations omitted), quoting *Thelen* v. *Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995).

The Supreme Court, however, has recognized that a hostile work environment claim is based not on a single act of harassment but on "the cumulative [e]ffect of individual acts." *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 115 (2002) ("The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.") (internal citations omitted). As such, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability . . . . In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Thus, with respect to her hostile work environment claim, Wyrick may include the various acts that took place outside the 300-day time limit. These acts, including Bertalmio's touching Wyrick's stomach while she was pregnant and other suggestive comments he made, are part of the alleged hostile work environment because Wyrick filed a charge within "300 days of any act that is part of the hostile work environment." *Id.*

However, concerning her claim of sex discrimination, any acts preceding the 300-day time limit must be viewed as untimely. In *Morgan*, in contrast to the situation listed above dealing with a hostile work environment, the Court noted that a "discrete retaliatory or discriminatory act 'occurred' on the day that it happened" and must be filed with the applicable time period. *Id.* at 110. A "discrete act" includes "termination, failure to promote, denial of a transfer, or refusal to hire . . . ." *Id.* at 114. Because as part of any sex discrimination claim Wyrick would need to show an adverse employment action, such action would be a "discrete act"

required to have been asserted within 300 days of its occurrence. Wyrick, in response to this claim, presents to the court no reason as to why these claims are not time-barred. Accordingly, in analyzing Wyrick's sex discrimination claim, the court will not consider these time-barred incidents.

1.    *Hostile Work Environment*

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 67 (1986). In order for Wyrick to make out a *prima facie* case of a hostile work environment, she must show that "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [her] sex; (3) the sexual harassment had the effect of unreasonably interfering with [her] work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the employee; and (4) there is a basis for employer liability." *Hall* v. *Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002), quoting *Parkins* v. *Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Chicago argues that Wyrick's claim fails at element (1) of her *prima facie* case because there were no incidents of sexual harassment in the forms required. Chicago also believes that element (2) fails because any harassment was not based on sex. Chicago argues that element (3) fails because any harassment was not intimidating, hostile or offensive and did not interfere with Wyrick's employment. Finally, concerning element (4), Chicago argues that, since there was no tangible job detriment such as firing or demotion, there is no basis for employer liability.

11

As for the first part of her *prima facie* case, sufficient evidence exists to create an issue of fact as to whether Wyrick was subject to unwelcome sexual harassment in the form of sexual advances or other verbal or physical conduct of a sexual nature. Viewing the facts in a light most favorable to Wyrick, she claims that (1) Bertalmio improperly touched her on five occasions while she was pregnant; (2) Bertalmio used a radio antenna to poke her in the buttocks; (3) Bertalmio made inappropriate sexual comments to her about women in general, including, but not limited to "Oh look at this one. She's got big jugs;" (4) Bertalmio made inappropriate comments to Wyrick on numerous occasions including making implications about an ink stain on her jeans and two comments that Wyrick was having a sexual relationship with a co-worker (one of which was made over Chicago's radio network); and (5) pornography was left both on her desk and in her truck. This is sufficient to create a genuine issue of material fact as to whether Wyrick was subject to unwelcome sexual harassment.

Moreover, the court also cannot say as a matter of law that the harassment was not based on Wyrick's sex. Chicago presents no evidence that male employees of the Streets and Sanitation Department were treated in this fashion. A reasonable jury could find that these actions were because of Wyrick "being a woman or belonging to a different gender from her tormentor." *Kaminski* v. *Freight-A-Ranger, Inc.*, No. 01 C 4937, 2002 WL 31174461, at *3 (N.D. Ill. Sept. 30, 2002), quoting *Galloway* v. *General Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by Morgan*, 536 U.S. 101.

A more difficult question is presented by the third portion of Wyrick's *prima facie* case. The issue here is whether the sexual harassment had the effect of unreasonably interfering with Wyrick's work performance and otherwise created an intimidating, hostile or offensive working

environment. The workplace harassment must have been "so severe or pervasive as to alter the conditions of [her] employment and create an abusive work environment." *Hilt-Dyson* v. *City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002). In addition, to qualify as "hostile" the work environment must be "both objectively and subjectively offensive." *Rhodes* v. *Illinois Dep't of Transp.*, 243 F. Supp. 2d 810, 819 (N.D. Ill. 2003), quoting *Hilt-Dyson*, 282 F.3d at 463. In determining whether a hostile work environment exists, the totality of the circumstances must be considered, including "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Haugerud* v. *Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001).

Chicago presents no argument concerning whether Wyrick subjectively perceived the work environment as hostile. Instead, Chicago argues that the environment was not objectively intimidating or hostile enough to constitute actionable sexual harassment. As Seventh Circuit case law illustrates, the burden on Wyrick to illustrate "severe or pervasive" conditions of employment is difficult although not insurmountable. *See, e.g., Adusumilli* v. *City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (affirming grant of summary judgment in favor of the defendant where plaintiff complained of ambiguous comments about bananas, rubber bands and low-neck tops, staring and attempts to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers or buttocks); *Baskerville* v. *Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (concluding that no actionable sexual harassment existed when supervisor, among other things, called plaintiff "pretty girl," once grunted when plaintiff wore a leather skirt, once commented that his office was not hot "until [plaintiff] stepped your foot in

13

here," commented when an announcement came over the public-address system that "You know what that means, don't you? All pretty girls run around naked," and once made a gesture intended to suggest masturbation); *Weiss* v. *Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (incidents, including asking the plaintiff for dates, attempting to kiss her and placing signs reading "I love you" in her work area were too isolated and insufficiently severe); *but see, Hostetler* v. *Quality Dining, Inc.*, 218 F.3d 798, 807-09 (7th Cir. 2000) (allowing claim to survive summary judgment where co-worker made an uninvited kiss and attempted a second one, attempted to remove the plaintiff's bra, and made lewd proposition for sex); *Faccio-Robert* v. *Empress River Casino*, 80 F. Supp. 2d 918, 920 (N.D. Ill. 2000) (alleged harasser "crossed the line" when he made a "crude pick-up attempt" coupled with a threat to fire the plaintiff unless she "put out," quizzed the plaintiff about her personal life, engaged her in conversations about sex or love, toasted on one occasion to "the Empress, to life, to women, to Hitler, to tits," and said "nice ass," "big tits," or other sexually-charged comments on a weekly basis).

The Seventh Circuit has conceded that exactly what conduct is sufficient to create a hostile work environment is difficult to ascertain. As the court in *Baskerville* noted,

> On one side is sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures; . . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers.

50 F.3d at 430 (internal citations omitted).

Here, the issue remains whether a reasonable jury, viewing the comments and actions in their entirety, could conclude that a hostile and intimidating work environment was present. Some of the facts alleged are similar to those in *Adusumilli,* including some level of limited

physical contact which, though clearly inappropriate, could be viewed as somewhat isolated in time. For example, Bertalmio's alleged touching of Wyrick's stomach on five occasions while she was pregnant, which was neither amorous nor hostile, was likely to have occurred prior to August 1997 when she went on maternity leave. Also, Bertalmio's poking of Wyrick with a radio antenna in her buttock was said to have occurred in the summer of 1998. This physical contact, as in *Adusumilli*, could be viewed as isolated and unlikely to create an intimidating and hostile work place.

However, no two cases are alike on the facts, and these physical incidents do not stand alone. Wyrick relies on additional testimony regarding the placement of pornography in her truck and near her work site, the sexually suggestive comments made by Bertalmio about "hot dates" after work and her having relationships with co-workers (one of which statements was broadcast over a Chicago internal radio network), sexually-suggestive comments by Bertalmio and other supervisors about other women, implications made about an ink stain on Wyrick's jeans, comments about blondes (referring to Wyrick) not being able to handle work equipment, and a supervisor repeatedly scratching his testicles in the workplace. The ultimate inquiry remains whether Wyrick can prove that the conduct was "not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal citation omitted). Under the totality of the circumstances alleged, there is sufficient evidence from which a jury could find that the work environment was objectively severe or pervasive enough to alter the conditions of Wyrick's employment. In short, the court cannot say as a matter of law that this conduct is not

"the kind of male attention that can make the workplace hellish for women." *Baskerville*, 50 F.3d at 430.

Because the court concludes that issues of fact exist as to whether the sexual harassment had the effect of unreasonably interfering with Wyrick's work performance in creating an intimidating, hostile or offensive working environment, the court must address employer liability, the final aspect of Wyrick's *prima facie* case. "The employer's liability [for sexual harassment of all kinds] is determined under agency principles, as the Supreme Court has enunciated them." *Molnar* v. *Booth*, 229 F.3d 593, 599-600 (7th Cir. 2000), citing *Burlington Indus.* v. *Ellerth*, 524 U.S. 742, 760-65 (1998) and *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 787 (1998). Generally, an employer bears vicarious liability for the harassment committed by a supervisor in accordance with the following rules as summarized in *Faragher*, 524 U.S. at 807-08:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Neither party disputes that Bertalmio was one of Wyrick's supervisors. Wyrick argues that she suffered two tangible employment actions based on her harassment complaints. She claims first that her reassignment to work on the back of a garbage truck following her complaint to Chicago's sexual harassment office was a tangible employment action. In addition, she argues

16

that her termination was an adverse employment action related to her complaint of sexual harassment.

For her claim of reassignment, or as she puts it, demotion, the only evidence Wyrick presents is her conclusional claim that her reassigned job was "less desirable because of the job type and the location." Initially, the court notes that this change was made because Wyrick did not wish to work under Bertalmio. (Def. L.R. 56.1 ¶ 103.) Wyrick admits that Denise Latton in Chicago's sexual harassment office gave her the option of either staying and working where she was (in R-3) or be transferred to Sanitation in D-5. (*Id.*) Wyrick further admits that a transfer to D-5 was still classified as a 1001 Laborer, the same as she was before. (Def. L.R. 56.1 ¶ 105.) Moreover, Wyrick's compensation remained the same, although she claims to have lost about $400.00 per paycheck from overtime not available at her new position. While a change in overtime benefits may constitute a tangible employment action, *see Kause* v. *Alberto-Culver Co.*, No. 97 C 3085, 2000 WL 875742, at *6 (N.D. Ill. June 28, 2000); *Coleman* v. *Pepsi-Cola Gen. Bottlers, Inc.*, No. 97 C 4898, 1998 WL 901675, at *12-13 (N.D. Ill. Dec. 21, 1998), Wyrick does not mention and does nothing to address Chicago's argument that this change was made on behalf of Wyrick and was made with her agreement. The court will not construct the argument for her. *See Doherty* v. *City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) ("Given our adversary system of litigation, '[i]t is not the role of this court to research and construct legal arguments open to the parties, especially when they are represented by counsel.'"), quoting *Sanchez* v. *Miller*, 792 F.2d 694, 703 (7th Cir. 1986). With absolutely no argument in support of this theory,

the court cannot say that it was an actionable tangible employment action.[3] This argument is rejected.

As for her termination, Wyrick again claims that it was a result of her complaints of harassment. However, there is substantial evidence in the record to show otherwise. Chicago's Inspector General's office was investigating Wyrick's residency violation well before she made any complaint of discrimination or harassment. Indeed, Wyrick freely admits that she was in violation of Chicago's residence requirements. Her only evidence in opposition to Chicago firing her based on this violation is her own conclusion, with no evidence in support, that other employees were given an opportunity to rectify residency violations. She also claims that her department followed a progressive discipline policy, although she fails to provide evidence that progressive discipline was used in similar cases or, for that matter, any other type of violation. Here the court does not deal with the issue of whether the firing was based on her illness (which is discussed in connection with her ADA claim below) but instead addresses whether the firing was based on her complaints of harassment. Indeed, Wyrick was fired nearly six months after she complained of harassment. There is no evidence to create a genuine issue of material fact on this claim.

Because the court as a matter of law concludes that no tangible employment action took place, Chicago could have asserted affirmative defenses that it (1) exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) Wyrick failed to take

_____

[3]An argument can certainly be made that presenting an employee with the option of staying in her position where she is subjected to harassment or offering her another job which may, in fact, result in tangible employment consequences is really no option at all. This claim, however, is not advanced and the court will not analyze it further.

advantage of any preventive or corrective opportunities provided by Chicago to avoid harm. *Wolf* v. *Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1142 (7th Cir. 2001). Chicago, however, did not argue or mention its affirmative defenses until its reply brief, thereby causing the court to view them as waived.[4] *E.g.*, *Fenster* v. *Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002) ("An argument introduced for the first time in a reply brief is waived."); *Estate of Phillips* v. *City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) ("[A]rguments raised for the first time in the reply brief are waived.") (internal citations omitted); *Montalvo* v. *Park Ridge Police Dep't*, 170 F. Supp. 2d 800, 803 (N.D. Ill. 2001) ("Arguments are deemed waived when raised for the first time in a reply brief.").

Thus, because questions of fact exist surrounding Wyrick's claim for sexual harassment, summary judgment must be denied on this portion of the Count III claim.

2.    *Sex Discrimination*

Under Title VII it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000(e)-2(a)(1). Wyrick brings a claim for sex discrimination on the basis that she was treated differently because she was a woman and pregnant. Wyrick presents no direct evidence of discrimination, so the court presumes she wishes to proceed under the "burden-shifting paradigm" of *McDonnell Douglas Corp.* v. *Green*,

---

[4]Chicago cannot claim that something in Wyrick's response prompted its inclusion of the affirmative defenses in its reply brief. Wyrick did not mention or address any of *Ellerth/Faragher* affirmative defenses in its response. Chicago maintains in its reply brief that it is "undisputed that under *Ellerth* and *Faragher* the City exercised reasonable care to prevent and correctly promptly any sexually harassing behavior, and that the plaintiff unreasonably failed to take advantage of the above-referenced preventive opportunities provided by the City or to avoid harm otherwise." Chicago provides no support for its argument that this is undisputed. It was not even mentioned in Chicago's opening brief, thereby causing the court to wonder when and where it became undisputed. In any event, Chicago has submitted nothing to substantiate its claim that this issue is undisputed.

411 U.S. 792, 802 (1973). *See Cullen* v. *Indiana Univ. Bd. of Trs.*, –F.3d–, 2003 WL 21741693, at *8 (7th Cir. July 29, 2003). To establish a *prima facie* case of sex discrimination under Title VII, Wyrick must show that "1) she was a member of a protected class, 2) she was meeting her employer's legitimate expectations, 3) she suffered an adverse employment action, and 4) the employer treated a similarly situated man more favorably." *Id.*; *Johnson* v. *Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999). If Wyrick establishes a *prima facie* case, the burden shifts to Chicago to provide legitimate reasons for any disparate treatment. *Cullen*, 2003 WL 21741693, at *8. If Chicago provides legitimate reasons, then Wyrick must establish that the proffered reasons are pretextual. *Id.*

For purposes of this motion Chicago assumes that Wyrick was a member of a protected class and that she was meeting her employer's legitimate performance expectations. Chicago challenges whether Wyrick can establish an adverse employment action or that similarly situated male employees were treated more favorably. In response, Wyrick asserts only that after she complained of harassment her position was transferred, which the court discussed above. That analysis also applies here, as Wyrick does little to show that a tangible employment action was taken. Also, Wyrick brings forth no evidence that similarly situated male employees were treated more favorably. Since no evidence is brought forth on this claim, summary judgment is granted in favor of Chicago.

**B.    Equal Protection Claim Against Bertalmio**

Wyrick brings her § 1983 claim against Bertalmio alleging that his harassment violated her constitutional right to equal protection under the law. In response, Bertalmio first argues that Wyrick's § 1983 claim is pre-empted by her Title VII claim. According to Bertalmio, because

Congress enacted Title VII and created a remedy to redress sexual harassment, resorting to § 1983 to enforce those same rights should not be allowed. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) (holding that the plaintiff, an employee of the defendant who alleged he was terminated because of racial discrimination, could not pursue a claim for his termination under both § 1983 and Title VII). The Seventh Circuit, however, has on numerous occasions allowed sexual harassment suits to be tried under both § 1983 and Title VII. *See, e.g., Murray v. Chicago Transit Auth.*, 252 F.3d 880, 883-84 (7th Cir. 2001) (former employee brought sexual harassment and retaliation suit against employer based on Title VII and employer's president under § 1983); *King v. Board of Regents of the Univ. of Wis. Sys.*, 898 F.2d 533, 534 (7th Cir. 1990) (assistant professor sued the University, various professors and other faculty members under both § 1983 and Title VII for sexual harassment, sexual discrimination and retaliation in the exercise of protected rights.); *Forrester v. White*, 846 F.2d 29, 32 (7th Cir. 1988) (employee brought action for sex discrimination under both under Title VII and § 1983).

Bertalmio asserts that the only reason suits have been allowed under both Title VII and § 1983 is that the parties in the cases cited above never challenged whether the § 1983 suit was preempted by Title VII. Even if that were the case, however, the Seventh Circuit has expressly allowed such suits to go forward and has formulated separate standards for bringing an equal protection claim under § 1983 for sexual harassment. *See Forrester*, 846 F.2d at 32 ("In an Equal Protection claim, the petitioner faces the tougher standard of proving purposeful and intentional acts of discrimination based on her membership in a particular class, not just on an individual basis."). In light of these clear Seventh Circuit precedents, this court is in no position to say that Wyrick cannot assert a § 1983 action against Bertalmio for sexual harassment.

21

Before addressing the merits of Wyrick's § 1983 claim, the court must again analyze the timeliness of the incidents she relies on. To determine the statute of limitations applicable in an action under § 1983, federal courts look to the forum state's statute of limitations for personal injury claims. *Mitchell* v. *Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002); *Ashafa* v. *City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, this time period is two years. 735 ILCS 5/13-202. Thus, Bertalmio argues that any of Wyrick's claims which occurred more than two years prior to the filing of her complaint on December 29, 1999 should be time-barred. While Wyrick could have made a persuasive argument as to why the holding of *Morgan* applies with equal force to sexual harassment suits under § 1983, she does not address *Morgan* or otherwise respond to the statute of limitations issue at all. Once again, the court declines to construct the argument for her. Therefore, any of the acts which occurred prior to December 29, 1997 are time-barred. This includes Bertalmio's comments about women's breasts and legs, his touching of Wyrick's stomach while she was pregnant, his asking Wyrick if she "had a hot date," one Valentine's day advertisement involving Bibbo, the work requirements that she lift empty garbage cans while pregnant and use a chemical to remove graffiti, and the decision to make her work alone on Lower Wacker Drive without a radio.

With the remaining incidents in mind, the court addresses Wyrick's equal protection claim. To establish a § 1983 claim for sexual harassment in violation of the equal protection clause, Wyrick would have to show both (1) sexual harassment, and (2) an intent to harass Wyrick based on her membership in a particular class, *i.e.*, because she was female. *Figueroa* v. *City of Chicago*, No. 97 C 8861, 2000 WL 1036017, at *1 (N.D. Ill. July 20, 2000), citing *Trautvetter* v. *Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990) and *King*, 898 F.2d at 538. The

22

harassment prong focuses on the burden a plaintiff faces in showing actionable sexual harassment under Title VII. *Trautvetter*, 916 F.2d at 1149. The harassment must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (internal citations and quotations omitted). Under the intent prong Wyrick must show that any harassment was "because of" her status as a women and not because of any characteristics which are personal to her. *Id.* at 1150; *Figueroa*, 2000 WL 1036017, at *1.

Starting with the harassment prong, the inquiry is essentially whether a reasonable jury could find any alleged harassment sufficiently severe or pervasive without the allegations which are time-barred. The court does not believe so. The actions relevant to sexual harassment which can be viewed as time-barred concerning Bertalmio are his touching of Wyrick's stomach while she was pregnant and his apparent statements that Wyrick had a "hot date." Moreover, Wyrick presents no evidence linking any of the pornographic materials to Bertalmio, thereby failing to create an issue of fact that he is liable for such harassment. Thus, no reasonable jury could find that the other acts of harassment, which would include the poking with the antenna, the comments suggesting Wyrick was having a sexual relationship with co-workers and the comments about the ink stain, would be severe or pervasive enough to alter the conditions of Wyrick's employment. In the hostile work environment claim discussed above the totality of the circumstances persuaded the court that a reasonable jury could find the incidents taken together could support a finding of a hostile work environment. With many of the events not being examined here, the court does not believe sufficient evidence is present to create a question of fact as to whether Bertalmio is liable for harassment that was severe or pervasive enough to alter Wyrick's employment. All that can be contributed to Bertalmio on this count is one act of

23

physical touching and his otherwise juvenile and inappropriate behavior. Bertalmio's motion is granted.

## C.    ADA Claims Against Chicago

Wyrick also asserts an ADA discrimination claim against Chicago. She argues that Chicago fired her because she was diagnosed with breast cancer. Wyrick's claim, however, fails at its threshold because she does not sufficiently show that her breast cancer constitutes a disability under the ADA.

A disability under the ADA is defined as either

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *Sutton* v. *United Air Lines*, 527 U.S. 471, 478 (1999). A major life activity is an activity of central importance to daily life. *Toyota Motor Mfg. Kentucky, Inc.* v. *Williams*, 534 U.S. 184, 197 (2002). ADA regulations provide the following representative list of major life activities: caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning and working. 29 C.F.R. § 1630.2(i). The burden lies on Wyrick to establish that she has a disability under the ADA. *Weiler* v. *Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996)

Wyrick presents no evidence to show that she suffers from a disability. While the court does not doubt that breast cancer is an impairment that could substantially limit major life activities, Wyrick fails to point to any major life activities or explain in what way she was substantially limited in performing them. *See Olbrot* v. *Denny's Inc.*, No. 97 C 1578, 1998 WL

24

525174, at *1 (N.D. Ill. Aug. 19, 1998) (dismissing ADA claim because plaintiff diagnosed with breast cancer did not present "any evidence that she has a physical or mental impairment that substantially limits one or more major life activities."). Wyrick also does not otherwise present evidence of a record of having such an impairment.

In her response Wyrick does claim that she "informed the City, through Denise Latton, on almost a daily basis that her health was failing . . .," but she does not argue that this should be grounds for Chicago regarding her as being disabled. Indeed, she does not state what major life activities Chicago regarded as being disabled because of her failing health. *E.g., Mack* v. *Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002) (noting that under the two formulations used to show that an employer regarded its employee as disabled "the plaintiff must show that the defendant believes she is 'substantially limited' in a 'major life activity'"). Therefore, summary judgment must be granted in favor of Chicago on Wyrick's ADA claim.

## CONCLUSION

For the reasons stated above, Chicago and Bertalmio's motion for summary judgment is granted in part and denied in part [#72]. Summary judgment is granted in favor of Bertalmio on the Count II claim. Summary judgment is denied on Wyrick's Count III hostile work environment claim. Summary judgment is granted in favor of Chicago on both Wyrick's Count III sex discrimination claim and Count V claim under the ADA. This case is set for trial on October 6, 2003. Final pretrial materials shall be submitted to chambers not later than September 5, 2003. In the meantime, the parties will be referred to the designated magistrate judge for a settlement conference. A final pretrial conference is set for September 19, 2003 at 4:00 p.m.

Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

Date: August 6, 2003